UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>FRANK HARON WEINER, PLC, and INTERNAL REVENUE SERVICE,<br><br>        Defendants. | Case No.  2:14-cv-11241<br>Honorable Laurie J. Michelson<br>Magistrate Judge Mona K. Majzoub |

**OPINION AND ORDER GRANTING THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT [26], DENYING FRANK HARON WEINER'S MOTION FOR SUMMARY JUDGMENT [23], AND GRANTING IN PART MORGAN STANLEY SMITH BARNEY'S MOTION FOR SUMMARY JUDGMENT [12]**

Defendant United States of America and Defendant Frank Haron Weiner, PLC ("FHW") both claim priority to the money formerly held in non-party Bradley Mali's IRA account with Plaintiff Morgan Stanley Smith Barney, LLC (and, similarly, the money formerly held in Mali's 401(k) account with non-party Lincoln National Life Insurance Company—the subject of another case before the undersigned). FHW's claim to the money is based on a $39,463.14 state-court judgment it received against Mali, its efforts to garnish the two retirement accounts to satisfy the judgment, and a subsequent state-court order directing Morgan Stanley and Lincoln National to use the funds in the accounts they held for Mali to collectively pay FHW $39,463.14. The United States' claim to the money is based on its enforcement of federal tax liens that it says attached to Mali's property, including the two retirement accounts, before FHW's interest in the accounts ripened. Morgan Stanley, faced with these competing claims, deposited the funds with the state court and filed an interpleader action. The United States removed that action here.

Before the Court are three motions for summary judgment. FHW's and the United States' motions each claim entitlement to the interpled funds as a matter of law. Morgan Stanley seeks dismissal from this case with an award of attorneys' fees for its efforts in bringing it. For the reasons that follow, the Court will GRANT the United States' motion for summary judgment (Dkt. 26), DENY FHW's motion (Dkt. 23), and GRANT IN PART Morgan Stanley's (Dkt. 12).

## I.

Although summary-judgment motions filed by three parties potentially creates a challenge in presenting the facts in the light most favorable to the non-moving parties, *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004), there are no genuinely disputed issues of fact requiring the Court's resolution to decide the motions. The undisputed facts necessary to resolving the three motions are as follows.

### A.

Beginning in at least 2007, non-party Bradley Mali did not pay all his federal income taxes. As a result, the United States is the holder of four "Notice[s] of Federal Tax Liens." (*See* Dkt. 26, Gov't Mot. Summ. J. Exs. 2–5.) Each of the four notices was recorded in the Oakland County Register of Deeds before the end of December 2012.

The first Notice of Federal Tax Lien is dated July 27, 2010, and was recorded on August 3, 2010. (Dkt. 26, Gov't Stmt. of Facts ¶ 1 & Ex. 2.) It gives notice of tax liens for over $67,000 in civil penalties for the tax year ending in December 2007, and, for the tax year ending in December 2008, over $47,000 in civil penalties and over $274,000 in federal income tax. (*Id.*)

The second Notice of Federal Tax Lien is dated November 15, 2012, and was recorded on November 28, 2012. (Gov't Stmt. of Facts ¶ 3 & Ex. 3.) It provides notice of tax liens for civil penalties for tax periods ending March 31, 2010 (over $129,000), June 30, 2010 (over

$107,000), September 30, 2010 (over $203,000), December 31, 2010 (over $265,000), and March 31, 2011 (over $151,000). (*Id.*)

The third Notice of Federal Tax Lien is also dated November 15, 2012, and was also recorded on November 28, 2012. (Gov't Stmt. of Facts ¶ 5 & Ex. 4.) It provides notice of tax liens for civil penalties for the tax periods ending September 30, 2011 (over $103,000) and March 31, 2012 (over $14,000). (*Id.*)

The fourth Notice of Federal Tax Lien is dated December 3, 2012, and was recorded on December 11, 2012. (Gov't Stmt. of Facts ¶ 7 & Ex. 5.) It gives notice of tax liens for civil penalties for the tax periods ending June 30, 2011 (over $154,000) and December 31, 2011 (over $146,000). (*Id.*)

The United States says that, as of November 10, 2014, the outstanding balances on the four Notices of Federal Tax Liens was over $1.6 million. (*See* Gov't Stmt. of Facts ¶¶ 2, 4, 6, 8.)

**B.**

On December 6, 2012, FHW sued Mali in Oakland County Circuit Court to recover unpaid legal fees for services it provided to Mali (and an associated business) in separate litigation. (*See* FHW's Mot. at 6 & Ex. F ¶¶ 25, 26, Pg ID 223; Gov't Resp. to FHW's Mot. at 9 & n.4.) About a year-and-a-half later, on July 24, 2013, the state court entered judgment in favor of FHW in the amount of $39,463.14. (Dkt. 23, FHW's Stmt. of Facts ¶ 1; Dkt. 25, Gov't Counter Stmt. of Facts ¶ 1.)

On November 14, 2013, the Oakland County Circuit Court issued FHW a writ to garnish Mali's retirement account held with Morgan Stanley. (*See* Dkt. 23, FHW's Mot. Ex. B, Req. & Writ for Garnishment.)

After Morgan Stanley responded to the writ by asserting that the funds it held for Mali were protected from garnishment (FHW's Stmt. of Facts ¶ 3; Gov't Counter Stmt. of Facts ¶ 3), FHW asked the Oakland County Circuit Court to compel Morgan Stanley to pay the funds held in Mali's account. (FHW's Stmt. of Facts ¶ 3; Gov't Counter Stmt. of Facts ¶ 3.)

On January 22, 2014, the Circuit Court granted FHW's motion to compel. (FHW's Mot. Ex. C, Jan. 22, 2014 Oakland Cty. Cir. Ct. Order.) The state-court order provided:

> 1. Motion as to Garnishee Defendants is Granted[.]
>
> 2. Effective Date — February 12, 2014.
>
> 3. Garnishee Defendants (Lincoln [National Life Insurance Company],[1] and, Morgan [Stanley]) to collectively pay [FHW] $39,664.91 from the Garnishees['] account[.]

(Jan. 22, 2014 Oakland Cty. Cir. Ct. Order.)

Eight days later, on January 31, 2014, the Internal Revenue Service sent Morgan Stanley a Notice of Levy. (Dkt. 12, Morgan Stanley's Mot. Ex. B, Notice of Levy.) The Notice provided that Mali owed the IRS $1,108,718.60. (*Id.* at Pg ID 68.) It further provided,

> The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given the notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you [Morgan Stanley] to turn over to us [IRS] this person's [Mali's] property and rights to property . . . that you have or which you are already obligated to pay this person.

(*Id.*; *see also id.* at Pg ID 70.)

FHW filed a motion to enforce the Oakland County Circuit Court's order. On February 26, 2014, the state court again directed Morgan Stanley to pay the funds to FHW. (FHW's Mot.

---

[1] The state court also issued FHW a writ to garnish Mali's account with non-party Lincoln National Life Insurance Company. There is a virtually identical dispute between the United States and FHW over those funds, which is the subject of another case before the undersigned. *The Lincoln National Life Insurance Company v. Frank Haron Weiner, PLC*, No. 14-11243, (E.D. Mich. filed Mar. 26, 2014). An opinion and order in that case will be entered contemporaneously with this one.

4

Ex. E, Feb. 26, 2014 Oakland Cty. Cir. Ct. Order.) The court explained in part, "the Court is aware of the IRS Notice of Levy to Morgan Stanley dated January 31, 2014 and finds that at the time of the levy, the property held by Morgan Stanley that is the subject of [FHW's] motion, was already subject to an attachment or execution under this Court's judicial process." (*Id.*) The court directed Morgan Stanley to pay the funds to FHW by March 3, 2014. (*Id.*)

Two days later, on February 28, 2014, the IRS agent responsible for the levy contacted Morgan Stanley. The agent provided, "We still believe our levy attached . . . for the reasons I've already described to you, and we would direct that Morgan Stanley pay the Internal Revenue Service." (Morgan Stanley's Mot. Ex. D, Feb. 28, 2014 Phone Call Tr. at 1.) The agent further stated that if Morgan Stanley instead paid FHW, he would "be compelled to recommend suit against Morgan Stanley for failure to honor our levy" and then Morgan Stanley would "have to not only pay us the money that—from Mr. Mali's account with them, but also with 50% penalty for not honoring the levy." (Feb. 28, 2014 Phone Call Tr. at 2.) "So," said the agent, "I think the interpleader action is the way to go . . . ." (*Id.*)

Thus, on or around February 28, 2014, Morgan Stanley filed an emergency motion for relief from the February 26, 2014 Oakland County Circuit Court order and initiated a new state-court action via an interpleader complaint. (FHW's Stmt. of Facts ¶ 7; Dkt. 1, Not. of Removal at Pg ID 4–10; Dkt. 16, FHW's Resp. to Morgan Stanley's Mot. at 2.)

On March 12, 2014, the Oakland County Circuit Court ordered Morgan Stanley to deposit the $39,664.91 it held in Mali's name with the court clerk. (Morgan Stanley's Mot. Ex. E, Mar. 12, 2014 Oakland Cty. Cir. Ct. Order.) Morgan Stanley deposited the funds with the clerk the same day, and that is where the $39,644.91 at issue in this case remains. (Morgan Stanley's Mot. at 1, Ex. F.) The state court further ordered that if the IRS did not "plead or

5

otherwise respond to Morgan Stanley's Interpleader Complaint . . . on or before April 2, 2014, the escrowed funds are to be paid forthwith to Frank Haron Weiner, PLC[.]" (Morgan Stanley's Mot. Ex. E, Mar. 12, 2014 Oakland Cty. Cir. Ct. Order.)

On March 26, 2014, the United States removed the interpleader action to this Court. (Dkt. 1, Not. of Removal.)

## C.

Each of Morgan Stanley, FHW, and the United States then filed motions for summary judgment. FHW and the United States filed cross motions—each arguing that it is entitled to the funds that were in Mali's retirement account with Morgan Stanley and are now deposited with the state-court clerk. (Dkt. 23, FHW's Mot.; Dkt. 26, Gov't Mot.) For its part, Morgan Stanley says it is a disinterested party stuck in the middle of FHW and the United States' dispute and should be dismissed from this case. (Dkt. 12, Morgan Stanley's Mot.)

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

As part of its summary-judgment motion, Morgan Stanley seeks attorney fees for its work related to this interpleader case. (Morgan Stanley's Mot. at 6–8.) But Morgan Stanley essentially concedes that if the United States (as opposed to FHW) is entitled to the funds at issue, it is not entitled to fees. (*See* Dkt. 19, Morgan Stanley's Reply at 2.) So the Court turns first to FHW's and the United States' motions for summary judgment. The primary issue to be resolved is which takes priority: FHW's judgment or the IRS' federal tax liens.

**A.**

FHW seeks summary judgment in its favor based on its judgment against Mali and a state-court order that directed Morgan Stanley to pay it the funds in Mali's retirement account before the United States sent Morgan Stanley the Notice of Levy. (*See* FHW's Mot. at 3–5.) More specifically, FHW says that the funds at issue were subject to "attachment or execution," *see* 26 U.S.C. § 6332(a), before the Notice of Levy was served on Morgan Stanley. (FHW Mot. at 3.) FHW adds that the "Oakland County Circuit Court Order dated February 26, 2014, came to that same conclusion." (FHW's Mot. at 3.) The United States responds that the focus should be on lien priority (as opposed to the Notice of Levy) and that 26 U.S.C. § 6332(a) does not determine lien priority. (*See* Gov't Resp. to FHW's Mot. at 10–11.) The Court agrees with the United States.

"[S]tart[ing] with the plain language" of the statute, *Limited, Inc. v. C.I.R.*, 286 F.3d 324, 333 (6th Cir. 2002), the provision FHW relies upon provides:

> Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

26 U.S.C. § 6332(a). Thus, by its terms, the statute directs a "person in possession of . . . property . . . subject to levy upon which a levy has been made"—here, Morgan Stanley—to "surrender such property" to the Internal Revenue Service "upon demand," "except" for the portion of the property that "is, at the time of such demand, subject to an attachment or execution under any judicial process." *See* 26 U.S.C. § 6332(a). Nothing in the plain language of § 6332(a) states which among competing liens on the property "subject to an attachment or execution under any judicial process" has priority at the time of the IRS' demand. The statutory provision merely

7

says that Morgan Stanley did not have to turn over to the IRS any property subject to an attachment or execution despite the demand.

This reading of 26 U.S.C. § 6332(a) is supported by the provision's purpose. Under 26 U.S.C. § 6332(d), "[a]ny person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered . . . ." Thus, the purpose of § 6332(a) is to provide property holders like Morgan Stanley with a defense to liability to the United States should they not surrender property upon demand—not to determine an issue of lien priority. *See, e.g.*, *United States v. Mississippi State Tax Comm'n*, 574 So. 2d 613, 616–17 (Miss. 1990) ("When the levy was issued against the [Mississippi State] Highway Commission, the Commission had already been ordered by the Clarke County Circuit Court to pay the funds into the registry of the court. Without the exception language in § 6332(a), the Commission would be subject to suit for failure to honor the levy if it went ahead and paid the funds to the Circuit Court. The exception language prevents such suit, but it does not determine the priority of the tax liens.").

Accordingly, the Court concludes that FHW has not established as a matter of law that it has priority over the United States to the funds by virtue of 26 U.S.C. § 6332(a).

**B.**

The United States moves for summary judgment in its favor based on 26 U.S.C. §§ 6321, 6322, and 6323. (Gov't Mot. at 3–6.) The Court agrees with the United States that these statutory provisions, and the case law applying them, establish as a matter of law that it has priority over FHW to the funds formerly held in Mali's retirement account with Morgan Stanley.

Under 26 U.S.C. § 6321, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." *See also United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20 (1985) ("The statutory language 'all property and rights to property,' . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."). The next section of Title 26 sets forth when the lien arises: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Thus, under 26 U.S.C. §§ 6321 and 6322, "the United States obtain[ed] a perfected lien upon all [Mali's] property . . . from the date of assessment." *Cent. Bank of Tampa v. United States*, 833 F. Supp. 892, 895 (M.D. Fla. 1993) (citing *Capuano v. United States*, 955 F.2d 1427, 1429 (11th Cir. 1992)).

Critical here is that, "[o]nce perfected, a federal tax lien[] has priority over all other subsequent state created interests apart from certain interests enumerated in 26 U.S.C. § 6323." *United States v. McGaughey*, No. 90-3475-WDS, 1999 WL 282780, at *2 (S.D. Ill. Mar. 24, 1999); *see also In re Restivo Auto Body, Inc.*, 772 F.3d 168, 172 (4th Cir. 2014) ("Under federal law, a lien in favor of the IRS attaches to all property owned by a person who 'neglects or refuses' to pay taxes for which he is liable after the IRS demands payment. 26 U.S.C. § 6321. The lien arises at the time the tax assessment is made, [26 U.S.C.] § 6322, and generally takes priority over a lien created after that date under the common-law principle that 'the first in time is the first in right[.]'").

9

In apparent acknowledgment of this general first-in-time rule, FHW argues that the exception set out in subsection (b) of § 6323 grants it priority over the United States to the funds. (*See* FHW's Mot. at 5–6; FHW's Resp. at 5–9.)[2] That provision provides in relevant part,

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid— . . .
>
> —With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement . . . .

26 U.S.C. § 6323(b)(8). By its plain language, § 6323(b)(8) is limited to the validity of a federal tax lien "[w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action . . . ." FHW does not appear to argue that the state-court judgment it obtained against Mali in July 2013 satisfies § 6323(b)(8)'s "judgment or other amount in settlement" clause.[3] Instead,

---

[2] The Court notes that 26 U.S.C. § 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any . . . judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." It appears that FHW does not rely on this subsection of § 6323 in support of its priority claim because either (1) it was not a "judgment lien creditor" within the meaning of § 6323(a), *see* 26 C.F.R. § 301.6323(h)-1(g), or (2) its state-court judgment was not entered until July 2013 whereas each of the four Notices of Federal Tax Liens was recorded in the Oakland County Register of Deeds before the end of 2012, i.e., at least seven months before the judgment in FHW's favor.

[3] Any such argument would not be persuasive. As will be explained, the purpose of § 6323(b)(8) is to enhance the taxpayer's property, which, in turn, increases the assets from which the United States may collect. FHW's suit *against* Mali did no such thing. *See Park City Leasing, Inc. v. V.I.P. Mobile Phone Centers, Inc.*, 763 F. Supp. 140, 142 (E.D. Pa. 1991) (interpreting § 6323(b)(8) to afford relief to attorneys that obtain a judgment on behalf of a delinquent taxpayer but not those attorneys who obtain a judgment *against* such a taxpayer). Moreover, if the July 2013 state-court judgment in favor of FHW did somehow satisfy § 6323(b)(8)'s "judgment or other amount in settlement" clause, the federal tax liens would only be invalid against FHW's "lien upon or a contract enforceable against" the July 2013 judgment "to the extent of [FHW's] reasonable compensation for obtaining" *the July 2013 judgment*, i.e., FHW's reasonable compensation for pursuing the state-court action against Mali. *See United States v. First Nat. Bank of Memphis*, 458 F.2d 560, 567 (6th Cir. 1972) ("'The priority granted to attorneys' liens is, however, limited to reasonable compensation for obtaining the judgment or

FHW argues that by representing Mali in prior litigation, it "enhance[d] the funds available to Mali by enriching him in the amount of $100,000.00." (FHW's Resp. to Gov't Mot. at 8.)

Even if FHW has enriched Mali by $100,000, FHW has produced no evidence that the funds it seeks, which were held in a *retirement* account, were the result of any "judgment" or "settlement of a claim or cause of action," let alone a judgment or settlement "obtain[ed]" or "procur[ed]" by FHW's representation. *See* 26 U.S.C. § 6323(b)(8).

FHW attempts to fill this evidentiary void by arguing that the funds at issue in this case are now held by the Oakland County Circuit Court Clerk and were the result of its garnishment efforts pursuant to its judgment against Mali. (*See* FHW's Mot. at 6; FHW's Resp. at 8.) But this argument overlooks the fact that the garnishment of Mali's account with Morgan Stanley did nothing to forward the rationale of § 6323(b)(8): to encourage attorneys to represent a delinquent taxpayer on a legal claim which could enlarge the taxpayer's estate, thereby increasing the property upon which the United States may recover for unpaid taxes. *See United States v. First Nat. Bank of Memphis*, 458 F.2d 560, 567 (6th Cir. 1972) ("The rationale for the attorney's lien superpriority was the enhancement of the taxpayer's property through the efforts of the attorney."); *United States v. McGaughey*, No. 90-3475-WDS, 1999 WL 282780, at *2 (S.D. Ill. Mar. 24, 1999) ("Congress intended § 6323(b)(8) to encourage attorney[]s to bring suits and obtain judgments that would put their clients in a position to be better able to pay their tax liabilities."); *Park City Leasing, Inc. v. V.I.P. Mobile Phone Centers, Inc.*, 763 F. Supp. 140, 142 (E.D. Pa. 1991) (providing that the theory behind § 6323(b)(8) "is that an attorney who helps to generate a fund benefitting a delinquent taxpayer is entitled to priority as against the government because such an attorney has helped to create an asset from which the government can recover

---

settlement.'" (quoting H.R. Rep. No. 89-1884, at 38–39)). Yet, FHW seeks $39,463.14 based on unpaid legal fees for representing Mali in litigation unrelated to its suit against Mali.

delinquent taxes"). If FHW did not garnish Mali's account, the assets would have remained in Mali's Morgan Stanley account available for the United States to levy. And even accepting FHW's assertion that the United States would not have made any "effort" to levy Mali's retirement account absent FHW's judgment or garnishment (FHW's Resp. at 9), it remains that FHW's collection efforts did nothing to enhance the property base, i.e., Mali's assets, upon which the United States could collect. *Cf. Blimpie Int'l, Inc. v. Peacox Ventures, LLC*, No. C-00-1510 VRW, 2001 WL 1155076, at *3 (N.D. Cal. Sept. 19, 2001) (finding § 6323(b)(8) applied to attorneys' efforts in procuring the interpled fund where "[w]ithout the interpled fund, the government would have no asset against which to attach its lien").

Accordingly, the Court concludes that under 26 U.S.C. §§ 6321, 6322, and 6323, the United States' Notices of Federal Tax Lien, all recorded before the end of 2012, have priority over FHW's interest necessarily perfected after the entry of the state-court judgment in July 2013.

### C.

FHW argues that even it loses on legal grounds, it wins on an equitable one. (FHW's Resp. at 9–10.) The law firm argues that "the IRS' strategy of pursuing its alleged rights to the interplead funds caused [it] prejudice . . . and should be barred under the doctrine of laches." (FHW's Resp. at 9.) Regarding unreasonable delay, FHW argues that the IRS "did not bring its Levy on the interplead funds until after [FHW] had secured a judgment against those same funds" and provided no reason for its delay "other than representing that they do not pursue such funds until another claimant secures a right to access those funds." (FHW's Resp. at 10.) Regarding prejudice, FHW asserts that it "incurred substantial cost for its legal work in obtaining an uncommon result of a judgment against retirement accounts" and that the IRS' delay

12

"allow[ed] [FHW] to believe that its debt would be paid out of the retirement accounts and that other forms of recovery did not need to be timely pursued." (FHW's Resp. at 10.)

FHW's laches argument, while focusing on when the IRS sent the Notice of Levy to Morgan Stanley, overlooks the fact that prior to, or within days of, FHW filing suit against Mali, the IRS had recorded each of the four Notices of Federal Tax Lien in the Oakland County Register of Deeds. FHW cites no authority suggesting that an entity contemplating suit is unfairly prejudiced where it had the ability to verify the existence of federal tax liens against the putative defendant's property by checking the applicable register of deeds. *Cf. United States v. Sirico*, 247 F. Supp. 421, 422 (S.D.N.Y. 1965) ("The essential purpose of the filing of the lien is to give constructive notice of its existence."). Indeed, while providing that such a recording is insufficient against certain enumerated interests, 26 U.S.C. § 6323(b)'s list does not include the interest of a putative judgment creditor. *See also* 26 U.S.C. § 6323(a), (f) (providing that federal tax lien is not valid against a judgment lien creditor "until" tax lien is properly recorded).

Also, as the United States argues, the case law indicates that the United States is not susceptible to a defense of laches in a case involving the enforcement of tax liens. *See Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003) ("It is well established that the Government generally is exempt from the consequences of its laches. . . . [T]here is no precedent holding that the Government is subject to its own laches in tax collection actions."); *Chevron, U.S.A., Inc. v. United States*, 705 F.2d 1487, 1491 (9th Cir. 1983) ("The government is not bound by state statutes of limitations or laches in enforcing its rights."). And FHW cited no contrary authority in support of its laches argument.

Accordingly, the Court finds that laches does not bar the United States' ability to recover the funds at issue in this case.

**D.**

As noted, Morgan Stanley moves for dismissal from this case but also seeks attorneys' fees for its efforts in bringing this interpleader action. (*See generally* Dkt. 12, Morgan Stanley's Mot.) Neither FHW nor the United States objects to Morgan Stanley's dismissal, but both object to a fee award. (*See generally* Dkt. 15, Gov't Resp. to Morgan Stanley's Mot.; Dkt. 16, FHW's Resp. to Morgan Stanley's Mot.) Morgan Stanley has essentially conceded that if the United States is entitled to the interpled funds, it is not entitled to attorneys' fees drawn from the fund. (*See* Dkt. 19, Morgan Stanley's Reply at 2.) The Court finds the concession appropriate. *E.g.*, *Millers Mut. Ins. Ass'n of Illinois v. Wassall*, 738 F.2d 302, 303 (8th Cir. 1984) ("It is well established that the Internal Revenue Code of 1954, 26 U.S.C. §§ 6321, 6322 (1982), prohibits an award of attorney fees where the effect of such an award would be to diminish the amount recovered by the United States under a prior federal tax lien." (citing cases)).

Accordingly, Morgan Stanley will be dismissed but without an award of fees.

**IV.**

For the foregoing reasons, the United States' motion for summary judgment (Dkt. 26) is GRANTED and FHW's motion for summary judgment (Dkt. 23) is DENIED. Morgan Stanley's motion (Dkt. 12) is GRANTED IN PART; in particular, Morgan Stanley is DISMISSED but will not be awarded attorneys' fees.

Judgment will not enter until the parties advise the Court that the funds held by the state-court clerk have been disbursed to the United States.

SO ORDERED.

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

Dated: March 5, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 5, 2015.

                                                s/Jane Johnson
                                                Case Manager to
                                                Honorable Laurie J. Michelson